Ms. Winslow. Good morning. May it please the court, counsel. Upon a motion for reduction of sentence pursuant to federal rule of criminal procedure 35, the district court judge reduced Mr. Harrington's sentence by 30 months. This reduction amounts to a reduction of approximately 14 percent of his sentence at the time the motion for reduction was heard. This, despite the government's motion for a reduction of 25 percent and the defense request for 35 percent. In granting the limited reduction, the district court violated the law. Mr. Harrington's case should be remanded to the district court. The district court relied upon four factors in determining the reduction. First, the first factor was that the district court did not believe that the assistance was substantial. The district court relied upon the fact that the targets of the underlying investigation were acquitted. Now, Judge Bauer, you asked earlier in an earlier argument, if that wasn't a consideration of the judge, why did the judge mention it? In the government's reply, the government suggests, or response, the government suggested that the district court, in fact, did not rely on the fact that the targets were acquitted. However, in the transcript, which is cited at length in my brief, that's the first suggestion of the district court, that, in fact, the targets, attorneys Brindley and Thompson, were acquitted following a bench trial and, therefore, the question whether or not assistance was substantial arises. The second consideration was that the court was his own trial. Now, this factor does not set Mr. Harrington apart from any, or from other individuals who were granted Rule 35 reduction motions pursuant to their cooperation in this investigation. In fact, this consideration raises the question of disparate sentences. In United States v. Chapman, this court left open the question of whether the court has reduction under Rule 35 violates the law because it could result in disparate sentences. In this case, in fact, it did result in disparate sentences. Specifically, there were four individuals who, four prior clients of attorneys Brindley and Thompson who testified as cooperators in the trial. Mr. Perez received a reduction of upwards of 50 percent from his sentence. Mr. Vasquez had not been sentenced, resentenced at the time that Mr. Harrington was resentenced, but Mr. Miles, who was in substantially the same position as Mr. Harrington, having testified falsely at his own trial, received a reduction of upwards of 35 percent from Judge Dara. The district court was well aware of this fact. In fact, the district court inquired about it and then made no commentary on it. The court did consider the factor and it was discussed by the parties. The third factor... Did that defendant lie in his own trial? He did, Your Honor. The third factor that the government relies upon is that Mr. Harrington had committed perjury at his trial and somehow gotten away with it, that the district court was concerned that Mr. Harrington did not receive an obstruction of justice enhancement. This, if I may, Judge, Your Honors, is somewhat of a red herring. Did Your Honor have a question? In fact, both the government and probation argued at length to the district court at the time of Mr. Harrington's sentencing that he had committed perjury. Probation asked for an obstruction enhancement. It was not given, not because the district court did not believe he committed perjury, but because the testimony to establish both the weapons enhancement and the drug quantity and then give him obstruction points for lying. In other words, to rely on his testimony for one purpose and then to say that it was false for another. I don't think you're making the right argument. Okay, Your Honor. Your argument should be the government wanted the 25 percent discount, right? That is correct. Now, why does the judge want to argue with the government? I don't get it. Well, Judge, if you cut me to the end of my argument, that's where I was going to end, but we'll move on to that. The consideration for the district court is whether or not Mr. Harrington substantially assisted the prosecution of attorneys Brindley and Thompson. In this case, Mr. Harrington met with the government. I don't understand that. The government was content with his participation. That's why I wanted to give him the 25 percent. The government was elated with his participation, and I think the government... So why does the judge want to take a harsher position than the I don't either, Judge. I think the prosecutors are mice or something. Your Honor. You need a cat to bite the defendant. We are in agreement, Judge. Mr. Harrington's cooperation was complete. The government agreed that Mr. Harrington's cooperation was complete. Mr. Harrington met with the government multiple times, along with myself. He testified before the grand jury. He testified for over a full trial day at the trial. Wasn't he also warned that the judge didn't have to accept the recommendation? Of course. Of course he was. But as Judge Posner... The government can ignore... I mean, the judge can ignore the government's thing, brush it off if he wants. I don't think that the judge can just simply brush it off. I think because... Is there a law that says he can't? I think... Well, yes. I think this court's... Don't we rely on the discretion of the judge when we say that? We do, but to simply ignore... We say that over and over again. That's right. The court has discretion... So then why doesn't he have the discretion to do so? Because there has to be a principled reason. What? There has to be a principled reason. Because the court... What is the principled reason? There was no principled reason in this case. The reasons that the court identified are not principled reasons. They... Did he ask to describe why he's using his discretion? Yes. Yes. As a matter of law? Yes, Your Honor. Who says? Besides Judge Posner? Well, I find that to be a credible source, Your Honor. This court says. This court says in the cases that are cited... And if you reject the recommendation of the government, you have to explain why? Yes, Your Honor. Really? Yes. And I believe Chapman says that. Chapman specifically says that this court has jurisdiction to consider whether failure to consider the relevant factors is a violation of the law. If he says I think it is appropriate that I give this other sentence, that's not sufficient? No, Your Honor. Okay. My understanding... I learned something new. My understanding of Judge St. Eve's decision and the reason why she granted the request but shaved some credit off the top is because it overcompensated given the fact that she had denied the obstruction of justice. Judge, again... Enhancement. I mean, that's what she said and we should take her at her word, I think. But her... I'm sorry. I don't mean to interrupt. Her word is unsupported by the record. In fact, if you look at the record and it's in the record, obviously we have the transcript. The record of the sentencing below suggests that the judge did take into account the fact of likely perjury during the original sentencing. That, in fact, she didn't give the obstruction enhancement because she relied upon Mr. Harrington's testimony to establish both drug quantity and the weapons enhancement. So it wasn't that he got away with something. He didn't get points or credit for something. Well, it would not have been inconsistent. It would not have been reversible error for her to give the obstruction of justice enhancement. But there was a basis for it and the fact that there might have been an internal inconsistency would not have undermined it. It was already considered. The only new factor at the time of the resentencing was Mr. Harrington's cooperation, his substantial assistance. And that was the one factor that Judge Saineev, that the district court did not consider. And for that reason, her decision to reduce by only 14% was error. Okay. Well, thank you, Ms. Wynja. Thank you. Mr. Bindi? Good morning. May it please the court. The government moved for a reduction of Mr. Harrington's sentence based on his substantial assistance. The district court found that he had given substantial assistance and granted the reduction, which is all consistent with the rule. The reduction was not as great as the reduction the government had recommended, but there's nothing about the rule or the law governing the rule that says that the district court is bound by the government's recommendation. The court has the discretion to decide for herself the value of the cooperation that the defendant provided. So she didn't think you guys were tough enough? That's her prerogative to think so. Justice Department too soft. In this instance, that was Judge Saineev's decision and it's her prerogative to say that. What did she know about prosecutorial decisions? I don't understand. Presumably you had a reason for the 25%. Yes, I would say so, Your Honor. Now, did she explore with you what your reasons were? Did she say to you, justify 25%? I don't think that that's part of the record. No, she did not do that in court. I mean, you think she'd want to know why the government was being generous to this guy before she decided to be harsher with him. That surprises me. The government made an argument in support of its motion and the district court heard that argument and the district court reached a different conclusion and she stated reasons for the conclusion that she did reach. Of course, it weakens prosecution to reduce the scope of the Justice Department making deals with these people. Next time you have some cooperating criminal that you want to, you know, you need his help, you want to give him a break, that's his compensation for helping you, he's going to say, well, I don't know, you can say this, but the judge, the judge isn't going to be bound by that, so it weakens the Justice Department to have the judge making her own judgment as to what is the appropriate discount. It is not an unfamiliar thing in many cases and in this case as well that the defendant, I'm sorry, doesn't the prosecutor, when he's explaining what he's going to recommend to the defendant, always stipulate that the judge may not accept it. That would be true, your honor, I think. It has to be true. Well, certainly it was made clear and on the record here that the defendant knew that going in. I have yet to see one where it wasn't made clear. And the government also knew that the district court was not bound and could grant a greater reduction. Even if you were unhappy with the Why did she say, why did Judge St. Eve say Mr. Harrington's testimony didn't establish beyond a reasonable doubt that Mr. Brindley and his co-defendant had committed the crimes that they were charged with? What's that about? Your honor, I don't read that as anything more than a comment on the fact that the defendants that Mr. Harrington testified. The cooperation was as good as the government thought it was going to be, or at least the judge thought it should be. The cooperation was not as good perhaps as Judge Leinenweber thought it might have been. There you go. And that was the reason for the result of that trial. But is Harrington responsible for the fact that the jury didn't convict Brindley? Well, it was a bench trial and no, he is not responsible. He's not responsible and Judge St. Eve didn't say that he was. But why did she say this? Well, because it sounds like, it sounds like she's saying, look Harrington, you failed. You were supposed to convict, you were supposed to get Brindley convicted. They didn't do that. So I'm not going to give you 25% when you're a lousy witness. At the risk of reprising an argument made during an earlier case, your honor. Yeah, she did say that. It's correct. She did say that, but she said that by of explicitly explaining that that's not what she was relying on. She was not basing her decision on the outcome of the trial at which Harrington was a witness. She was basing her decision on on her view regarding the value of his cooperation in the context of his overall The judge was one time a prosecutor herself, wasn't she? Pardon me? The judge spent some years as a prosecutor herself, if I recall. I seem to recall that that's the case, your honor. We have the same memories. The district court's decision to reach her own conclusion regarding the value of the cooperation and to impose the sentence that she imposed was not an error of law. And that basically is the question before the court on appeal from a Rule 35b decision, is whether the district court made an error of law. And the district court here did not make an error of law. The district court found value in the assistance that Harrington provided and awarded a discount based on that value as she saw fit. There's nothing contrary to the law regarding Rule 35b. Is there a Justice Department standard for these percentages on these substantial assistance motions? I don't think it's department wide. Is there a district standard? This was an out-of-district prosecutor. That's correct. And as far as what district standards are, that would be a matter for to take up, I guess, with the U.S. Attorney. So you don't know if the Northern District of Illinois standard differs from the Milwaukee standard? I don't know for sure. I think that in the run of cases you can see that recommendations for sentence reductions for cooperating defendants tend to follow a pattern. Whether that pattern is the same from the prosecutor's office in Milwaukee as it is at the prosecutor's office here, I can't speak to that. Sorry. Well, and this was kind of a special case too. This involved a prosecution against a couple of attorneys. It was an unusual case. That is also correct. If she'd given him no discount, would you still be defending her? I believe that I would have to look at the reasons for the decision not to grant a discount if they were contrary to the law governing the district court's actions on a Rule 35 motion, then that might make for a different matter. But I will say that in this case, the judge assigned a value to the assistance that was provided as the rule contemplates. It was a lower value than the defendant had hoped for and lower value than the government had recommended. But she assigned a value, she granted the reduction, she complied with the law, and we asked that the court affirm. Thank you. Thank you, Mr. Brindley. Ms. Winslow, do you have anything further? Very, very briefly. First, as to the question whether or not there was a reason given for the percentage of reduction, there was. In fact, on the record, there was some discussion. Individuals who testified falsely in their own trials but cooperated with the government and their prosecution of attorneys Brindley and individuals who cooperated with the government but had not committed perjury in their own trials were recommended a 40% reduction. But that was a case-specific standard. That's not a district. That's correct. Prior to your question, there was a question about whether there was an explanation for the percentage. That is not district-wide or, as I understand it, justice-wide. That was just this case. The policy for this case, the Justice Department's policy for cooperators in this case. The Eastern District of Wisconsin policy. I'm not sure we could call it the whole Justice Department, but yes. Got it. This case-specific. Secondly, there was the question of whether Mr. Harrington can be held responsible for the acquittal. This sets, in this case, sets a dangerous precedent to the extent that that was a consideration in the judge's mind. The judge mentioned it. There was a reason she mentioned it. She stated on the record that she did not believe that Mr. Harrington's testimony was proof beyond a reasonable doubt. That's that in order for them to get their deal, they have to give the evidence. The implication being the defendant lied when he testified that they didn't accept. Well, the implication being that if the target of the cooperation is not convicted, cooperation credit will not be given, which could give cooperators the incentive to lie and exaggerate, and that's a dangerous precedent to set. Thirdly, the government closed by saying that the judge assigned a value to Mr. Harrington's cooperation. The district court did not properly consider the extent of cooperation. There was no flaw in Mr. Harrington's cooperation at all, and so the fact that the district court considered factors other than the cooperation, such as his prior perjury, detracts from the value of the court's finding. We believe that the case should be remanded for resentencing to the district court. Okay, thank you, Ms. Winslow and Mr. Bindi.